UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LUCAS D. KENDALL, SCRAP MART PROPERTIES, LLC and SCRAP MART LLC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 4:21CV1353 HEA |
| CITY OF VALLEY PARK, MISSOURI, et al., | ) ) |
| Defendants. | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss, [Doc. No. 53]. Plaintiffs oppose the Motion. Defendants have filed a Reply to the Opposition. For the reasons set forth below, the Motion is

### **Facts and Background[1]**

Plaintiffs' First Amended Complaint alleges the following:

This lawsuit arises out of actions by various officials of the City of Valley Park, Missouri ("Valley Park") that culminated in an unlawful denial of Plaintiffs' business license and the unlawful issuance of ordinance violation citations directly infringing on Plaintiffs' constitutionally protected rights.

---

[1] This recitation of facts is taken from Plaintiffs' First Amended Complaint and is set forth for the purposes of this motion only and does not relieve any party from the necessary proof thereof in later proceedings.

Since April 1, 2011, and continuing without interruption, Plaintiff Scrap Mart, LLC has been operating a scrap metal recycling business on the property commonly known as 145 Outer Road West and 165 Outer Road West, both situated in Valley Park, Missouri (collectively, "Plaintiffs' Property").

On May 6, 2013, Valley Park adopted its comprehensive zoning code (the "2013 Zoning Code"), which classified Plaintiffs' Property as "1-1 Light Industrial." The operation of a scrap metal business is not a permitted use on Plaintiffs' Property pursuant to the 2013 Zoning Code. However, since Plaintiffs' operation of the scrap metal recycling business predates adoption of the 2013 Zoning Code, Plaintiffs have a constitutionally protected "nonconforming use," and, therefore, are permitted to continue operation of their business.

Although having acknowledged Plaintiffs' constitutionally protected status as a "nonconforming use," and accepting Plaintiffs' payment of its business license fee for many years, Valley Park has unlawfully attempted to close Plaintiffs' scrap metal recycling business and coerce Plaintiffs to comply with the 2013 Zoning Code.

Beginning in October 2020, Valley Park issued to Plaintiff Lucas D. Kendall ("Kendall") eight (8) citations alleging that Kendall is violating various provisions of Valley Park's 2013 Zoning Code due to Plaintiffs' operation of the scrap metal recycling business upon Plaintiffs Property. In January 2021, Valley Park issued

four (4) additional citations alleging the same violations.' Each of these citations were issued in direct contravention of Plaintiffs' constitutional rights.

Since issuing the original citations, Valley Park increased its effort to stop Plaintiffs' business operations by denying Plaintiffs their business license. Valley Park issued a business license to Plaintiffs in 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019 and 2020, for which Plaintiffs paid Valley Park the required fee. On January 22, 2021, Valley Park accepted Plaintiffs' business license renewal and documentation and fee for calendar year 2021 but failed to issue the license. On about June 23, 2021, Valley Park returned Plaintiffs' license fee with an undated letter stating that the business license was denied because Plaintiffs are not in compliance with the 2013 Zoning Code.

Plaintiffs claim Valley Park's actions in denying Plaintiffs' business license and issuance of the citations were unconstitutional, unlawful, unreasonable, arbitrary, and capricious.

Plaintiff sets out that Plaintiff Scrap Mart Properties, LLC owns the subject property, Plaintiff Scrap Mart, LLC operates a scrap metal and recycling business on the property, and Plaintiff Kendall is the manager of the business. They allege they have been operating the scrap metal business since 2011, prior to the enactment of the Valley Park comprehensive 2013 Zoning Code. After the Code was enacted, Plaintiffs continued to operate the business under a "nonconforming"

use exception to the I-1 Light Industrial zoning classification.  Plaintiffs have continuously operated the scrap metal business on Plaintiffs' Property since at least April 1, 2011. Prior to Plaintiffs' operation of the scrap metal business, a portion of Plaintiffs' Property was used for the sale and storage of steel and steel products.

Plaintiffs believe Valley Park desires to expel and remove Plaintiffs from the City to close Plaintiffs' business, and to repurpose the Property for use by another developer or individual which Valley Park finds more desirable, all without providing just compensation to Plaintiffs. The official policy or unofficial custom and goal of Valley Park is to expel Plaintiffs and their business by any means necessary, including by unconstitutionally and arbitrarily citing Plaintiffs for alleged zoning code violations and by revoking their business license without any form of due process.

Issuance of the citations was carried out by Rinck and Proemsey at the official direction of Valley Park, Webster and Hosna in their quest to harass Plaintiffs all while knowing of Plaintiffs' constitutional rights. To the extent Rinck and Proemsey issued the Original Citations and/or 2022 Citations on their own accord and not based upon the policy of Valley Park or the direction of Webster and Hosna, then such was the result of Valley Park's deliberate and indifferent failure to train and supervise these individuals to protect Plaintiffs constitutional rights.

4

Plaintiffs' Property is zoned "l-1 Light Industrial" under the 2013 Zoning Code. 3 5. According to the 2013 Zoning Code, the operation of a scrap metal recycling center is not permitted within the "I-1 Light Industrial" district except upon Valley Park's conditional approval.

Prior to Valley Park's adoption of the 2013 Zoning Code, Plaintiffs were permitted to operate their scrap metal recycling business on Plaintiffs' Property without interference, limitation or restriction by way of zoning ordinances imposed by Valley Park because such ordinance did not exist. As such, Plaintiffs' operation of the scrap metal recycling business upon Plaintiffs' Property, which predates the 2013 Zoning Code, constitutes a vested and lawful "nonconforming use" which is a constitutionally protected property right.

Valley Park's 2013 Zoning Code attempts to prohibit or otherwise prevent Plaintiff's operation of a scrap metal recycling facility upon Plaintiffs' Property. Plaintiffs have a constitutionally protected right to carry on and operate its scrap metal recycling business on Plaintiffs' Property, free from intrusion, interference or restriction by Valley Park.

In October 2020, Valley Park and Proemsey, acting at Webster's direction, issued Plaintiff Kendall eight (8) citations alleging that Kendall violated, or continues to violate, certain provisions of the 2013 Zoning Code due to Plaintiffs' operation of the scrap metal recycling business situated upon Plaintiffs' Property.

5

In January 2021, Valley Park and Proemsey, acting at Webster's direction, issued four (4) additional citations to Kendall alleging violations of the 2013 Zoning Code for the same reasons. These citations allege Plaintiffs violated 405.170.D.l0(b) of Valley Park's 2013 Zoning Code by failing to keep or store the recycled materials enclosed or hidden from street view by a suitable fence.

The October 2020 citations and January 2021 citations, which were issued by Proemsey, were issued after he acknowledged via email that Plaintiffs' business is a "legal thriving and growing business ... "

As early as September 30, 2020, and continuing ever since, Valley Park's own city planners and experts with PGAV Planners concurred and admitted that Plaintiffs business constitutes a lawful and legal nonconforming use. This same conclusion was reached by Valley Park's own attorneys when responding to requests for admissions propounded in prior litigation and in their own response to a motion to dismiss filed before the St. Louis County Circuit Court in the case styled Scrap Mart, LLC et al. v. City of Valley Park, Missouri, Case Number 21SL-CC00867. Despite all the admissions that Plaintiffs' business constitutes a lawful and legal nonconforming use, beginning in July 2022 and continuing through September 2022, Valley Park, acting at the direction of Webster, code enforcement officer Rinck issued an additional one hundred ninety-eight (198) citations to Plaintiffs alleging various ordinance violations including, violations of

the 2013 Zoning Code and operating without an occupancy permit, all in violation of Plaintiffs' constitutionally protected property rights and contrary to Plaintiffs' nonconforming use status.

Valley Park, Webster, Proemsey, Hosna, and Rinck all had knowledge of Plaintiffs' nonconforming use status and, despite this knowledge, issued the citations under color of law and in violation of Plaintiffs clearly established constitutional rights. Although being in a position of authority with the power to direct code enforcement officers, Webster, Hosna, and Valley Park failed to take proper corrective actions to stop Rinck and Proemsey from violating Plaintiffs constitutional rights. Such action by Valley Park, Webster, Hosna, Rinck and Proemsey, taken under color of law, was intentionally designed to harass and intimidate Plaintiffs and to coerce Plaintiffs into abandoning their constitutional right to operate their scrap metal recycling business.

By denying Plaintiffs their business license, which had been issued without incident for the preceding ten (10) years, Valley Park effectively revoked Plaintiffs' business license, a protected and established property right.

At no time prior to the purported revocation/denial of Plaintiffs' business license on June 23, 2021 did Valley Park provide Plaintiffs any advance notice of its intent to revoke the license. Similarly, Valley Park, Webster, and Hosna never presented Plaintiffs an opportunity to contest the revocation or have any hearing.

Valley Park, Webster, and Hosna never advised Plaintiffs of any investigation, study, hearing, expert reports, or studies concerning the propriety of denying Plaintiffs' business license.

Given Valley Park's purported revocation of Plaintiffs' business license and Valley Park's prior issuance of the Original Citations, there exists the very real possibility that Valley Park will issue additional citations against Plaintiffs alleging some violation of having operated a business without an appropriate license. Valley Park's actions, as alleged, are intentionally designed to harass, intimidate and expel Plaintiffs from the city limits, to coerce Plaintiffs to cease operating their scrap metal business, and to cause severe economic and non-economic harm to Plaintiffs, all in contravention of Plaintiffs' constitutional rights as a nonconforming use.

Plaintiffs have a constitutionally vested and protected right to maintain and operate their scrap metal recycling business upon Plaintiffs' Property. By its own actions, Valley Park clearly disagrees and asserts that it may, without due process of law, violate Plaintiffs' rights and property interests.

The purported revocation of Plaintiffs' business license and the issuance of the citations deprives Plaintiffs of their due process rights guaranteed by the United States and Missouri Constitutions and is an illegal attempt to deprive Plaintiffs of vested property rights to occupy and use Plaintiffs' Property as a scrap metal

recycling facility without due process or fair and just compensation. Valley Park's actions are unconstitutional, unlawful, unreasonable, arbitrary and/or capricious in that Valley Park conducted no hearing prior to revoking Plaintiffs' business license, provided Plaintiffs no opportunity to contest the revocation of their business license, and issued the citations alleging a violation of the 2013 Zoning Code while having previously admitted that Plaintiffs' business constitutes a legal nonconforming use. The City's Code Enforcement Officer admitted that Plaintiffs' scrap metal recycling business and the use of Plaintiffs' Property as such was a "legal thriving and growing business." Despite admitting Plaintiffs' use of Plaintiffs' Property constitutes a nonconforming use, the City has sought to coerce Plaintiffs to comply with the 2013 Zoning Code, specifically including the provision from which Plaintiffs are exempt.

As a vested nonconforming use under clearly established Missouri Law, Plaintiffs are entitled to continue operating their scrap metal business free from the restrictions or burdens imposed by the 2013 Zoning Code.

The actions of Valley Park, Hosna, Rinck, Proemsey and Webster, as alleged herein, run afoul of clearly established Missouri and Federal law and are completely unsupported by any evidence or authority. Their actions are contrary to their own prior admissions, actions, official city policy and/or unofficial city

custom all recognizing that Plaintiffs' business constitutes a lawful and legal nonconforming use.

Plaintiffs claim to have a legally protectable interest in the operation of their scrap metal recycling business upon Plaintiffs Property, with the operation thereof free from Valley Park's attempts to regulate same through the 2013 Zoning Code. Plaintiffs also claim they have a vested property interest in the issuance, approval and receipt of their yearly business license for which Plaintiffs paid the required fees and charges to Valley Park.

Plaintiffs' First Amended Complaint sets forth claims for declaratory judgment and mandamus (Count I); injunction (Count II); violation of the procedural due process clause of the Fourteenth Amendment of the United States Constitution (Count III); violation of the equal protection clauses of the United States and Missouri Constitutions (Count IV); unilateral taking without just cause or compensation (Count V); and abuse of process (Count VI).

Defendants moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

## Motion to Dismiss Standards

### Rule 12(b)(1)

Initially, Defendants argues Plaintiffs lack standing to bring the claims sought. Defendants' arguments regarding standing present a challenge to the

Court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants' arguments raise a "facial" challenge. *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (noting that a facial challenge to subject matter jurisdiction looks only at the pleadings and essentially applies the Rule 12(b)(6) standard). When considering a facial challenge to jurisdiction, courts presume the facts alleged in the complaint to be true. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). For a plaintiff to meet his burden to allege standing he must show (1) an injury in fact that (2) is fairly traceable to the Defendants' alleged conduct and (3) is likely to be redressed by a favorable court ruling. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

**Rule 12(b)(6)**

In order "[t]o survive a motion to dismiss, a complaint must plead sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Edwards v. City of Florissant*, 58 F.4th 372, 376 (8th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible if the plaintiff pleads facts that allow the court to draw the reasonable inference that the Defendants is liable for the misconduct alleged." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 953 (8th Cir. 2023) (internal quotation marks and alteration omitted) (quoting *Iqbal*, 556 U.S. at 678)). "If, on the other hand, the plaintiff

11

pleads facts that are merely consistent with a Defendants' liability, the complaint stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted); accord *Edwards*, 58 F.4th at 377 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown— that the pleader is entitled to relief." (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937)).

In deciding whether a complaint satisfies the plausibility test, the Court must "accept 'as true the complaint's factual allegations and grant[ ] all reasonable inferences to the non-moving party.'" *Park Irmat Drug Corp. v. Express Scripts Holding Co*., 911 F.3d 505, 512 (8th Cir. 2018) (alteration in original) (quoting *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 591 (8th Cir. 2009)). This rule "is inapplicable to legal conclusions," which the Court may disregard. *Iqbal*, 556 U.S. at 678. Likewise, "'naked assertions devoid of further factual enhancement,' do not suffice, nor do '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). With few exceptions, the Rule 12(b)(6) analysis is constrained to factual matter alleged in the complaint. See *Miller v. Redwood Toxicology Lab., Inc*., 688 F.3d 928, 931 (8th Cir. 2012) ("[T]he court generally must ignore materials outside the pleadings, but

it may consider some materials that are part of the public record or do not

contradict the complaint, as well as materials that are necessarily embraced by the

pleadings." (citations omitted)).

## Discussion

**Standing**

Defendants argue Plaintiffs lack standing because they fail to set out which

Plaintiff is bringing what claim against which Defendant or Defendants.

> Under Article III of the United States Constitution, federal courts can only
> decide actual "Cases" and "Controversies" between two or more parties.
> U.S. Const. art. III, § 2, cl. 1. Therefore, to have standing to sue, a plaintiff
> must show "such a personal stake in the outcome of the controversy as to
> assure that concrete adverseness which sharpens the presentation of issues
> upon which [federal courts] so largely depend[ ] for illumination of difficult
> ... questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962). "To establish
> standing, the plaintiff must have (1) suffered an injury in fact, (2) that is
> fairly traceable to the challenged conduct of the defendant, and (3) that is
> likely to be redressed by a favorable judicial decision." *Young Am.'s Found.
> v. Kaler*, 14 F.4th 879, 887 (8th Cir. 2021) (cleaned up). "The party invoking
> federal jurisdiction bears the burden of establishing these elements," *Lujan
> v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and "must demonstrate
> standing for each claim he seeks to press and for each form of relief that is
> sought," *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008).
> Additionally, under prudential standing principles, "even when the plaintiff
> has alleged injury sufficient to meet the 'case or controversy' requirement,
> [the Supreme Court] has held that the plaintiff generally must assert his own
> legal rights and interests, and cannot rest his claim to relief on the legal
> rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499
> (1975).

*Driver v. Wood*, No. 5:22-CV-05049, 2023 WL 3046350, at *4 (W.D. Ark. Apr.

21, 2023).  Although Plaintiffs argue their claims are "intertwined" such that they

may maintain this action as alleged, combining separate claims of separate

Plaintiffs fails to satisfy clearly established standing requirements. The sole

allegation of Plaintiff Scrap Metal Properties is that it owns property. It claims no

injury in fact that is traceable to any defendant.

Regarding Plaintiff Kendall, the First Amended Complaint addresses only

the citations issued by Defendant Valley Park through its agents. As he is the

manager of Scrap Mart, he has not, and under these facts, cannot claim he was

denied a business license, a claim that belongs to Scrap Mart, LLC.

> "A plaintiff must establish subject matter jurisdiction, for which standing is
> a prerequisite." *Jewell v. U.S*., 548 F.3d 1168, 1172 (8th Cir. 2008).
> Standing has two related components: "the constitutional requirements of
> Article III and nonconstitutional prudential considerations." *Franchise Tax
> Bd. of California v. Alcan Aluminum Ltd*., 493 U.S. 331, 335 (1990).
> Constitutional standing consists of three elements: (1) the party must have
> suffered an injury in fact, meaning an actual or imminent concrete and
> particularized injury to a legally protected interest; (2) the injury is fairly
> traceable to the challenged action of the defendant; and (3) the plaintiff's
> injury must be redressable by a favorable decision. *Jewell*, 548 F.3d at 1172.
> In addition to the constitutional requirements, there are prudential limits to
> the court's exercise of jurisdiction. Id. One of the prudential requirements of
> the standing doctrine is that a litigant "generally must asserts his own legal
> rights and interests, and cannot rest his claim to relief on the legal rights or
> interests of third parties.' " *Franchise Tax Bd. of California*, 493 U.S. at 336
> (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975). With regard to this
> prudential requirement, the U.S. Supreme Court has stated: "[r]elated to this
> principle we think is the so-called shareholder standing rule." *Franchise Tax
> Bd. of California*, 493 U.S. at 336 (quoting Warth, 422 U.S. at 499).
>
> As previously touched upon, a corporation is a separate and distinct entity
> from its stockholders. *Potthoff v. Morin*, 245 F.3d 710, 716 (8th Cir. 2001).
> The "shareholder standing rule" provides that "[a]ctions to enforce corporate
> rights or redress injuries to the corporation cannot be maintained by a

stockholder in his own name...even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock." *Id*. (quoting *Brictson v. Woodrough,* 164 F.2d 107, 109 (8th Cir.1947) (footnotes omitted)). See also *Duff*, 2010 WL 11509207, at *4 (lost profits and reduced revenue are corporate injuries and cannot serve as a basis for a shareholder's direct claim). Thus, as a general rule, "if a harm has been directed toward the corporation, then only the corporation has standing to assert a claim." *Id*. A stockholder's claim can survive only if he alleges "that he personally has suffered a direct, nonderivative injury." *Potthoff*, 245 F.3d at 717. See *Franchise Tax Bd. of California*, 493 U.S. at 336.

*Wolf v. Altmann*, No. 4:22-CV-397 PLC, 2022 WL 17735541, at *16 (E.D. Mo. Dec. 16, 2022).

Plaintiffs argue Kendall's standing is "akin" to the standing decision in *McGowen, Hurst, Clark & Smith, P.C. v. Commerce Bank*, 11 F.4th 702 (8th Cir. 2021).  While Kendall may assert his declaratory judgment claim and challenge the issuance of the citations, he still must assert an injury in fact with regard to the remaining claims.

Plaintiffs also contend Scrap Mart Properties and Scrap Mart both suffered injuries in the failure to issue the business license such that they cannot operate "their" business on the property.  As written, however, the First Amended Complaint fails to set forth any facts regarding the operation of any business by Scrap Mart Properties.  Plaintiffs must set forth sufficient facts to apprise each defendant of the specific claims of each plaintiff.

**Due Process**

15

Defendants argue Plaintiffs have failed to exhaust their administrative remedies prior to bringing their Section 1983 claim for a violation of due process. Plaintiffs contend they are not required to exhaust because there was no opportunity for a hearing before the denial of the business license, and therefore nothing could be appealed. The Court agrees with Plaintiff that it is sufficient at the pleading stage to allege the lack of any ability to challenge the denial of the license is sufficient.

> With respect to the due process claim, "where the alleged constitutional violation is one of procedural due process, exhaustion of state remedies is necessary before the allegations can state a claim under § 1983." *Westmoreland Real Estate, L.L.C. v. City of St. Louis, Mo.*, No. 4:11CV1648 CDP, 2012 WL 2458403, at *5 (E.D. Mo. June 27, 2012). Here, at the pleading stage, the Court finds that Plaintiff's allegations that the City's denials did not give rise to an appeal is sufficient to overcome the City's motion to dismiss Plaintiff's procedural due process claim. *But see Westmoreland Real Estate*, 212 WL 2458403, at *5 (dismissing plaintiffs' procedural due process claim under Rule 12(b)(1) for lack of ripeness where plaintiffs' appeal with the Board of Adjustment was not final).

*Gibbs v. City of New Madrid*, No. 1:15CV88 RLW, 2018 WL 1811903, at *4 (E.D. Mo. Apr. 17, 2018).

**Non-conforming Use**

> "The term 'nonconforming use' means a use of land which lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with the new use restriction." *Lamar Co., LLC v. City of Columbia*, 512 S.W.3d 774, 788 (Mo. App. W.D. 2016) (internal quotation marks omitted). "The theory behind the nonconforming use doctrine is that applying new zoning restrictions to established uses of land would constitute a taking of private property without just compensation or due process." *Id.* (internal quotation marks omitted). "As such, the prior use which is now considered

16

'nonconforming' is deemed legal or lawful and is allowed to continue albeit in violation of current zoning laws." *Id.* (internal quotation marks omitted).

*Parkview Vale, LLC v. Bd. of Zoning Adjustment for City of Kansas City*, 620 S.W.3d 268, 273–74 (Mo. Ct. App. 2021).

Defendants argue Plaintiffs fail to set out a protectable property right in the First Amended Complaint. Conversely, Plaintiffs contend they have a property interest in using the land as a scrap metal business because they were using the property as such before the enactment of the 2013 Zoning Code for Valley Park. Plaintiffs' statement that its operation of the business was legal before the Code and therefore the continued operation constitutes a protected non-conforming use, is a conclusion that is insufficient to set forth a claim under *Iqbal*.  Plaintiffs' conclusory statement that the business was legal does not inform Defendants of the basis of the claim and the Court need not accept the conclusion as true .

Likewise, the First Amended Complaint fails to set out whether the use of the property has continued to remain as it was prior to the Code, as is necessary for Plaintiff to continue business as a non-conforming use.

Plaintiffs argue they are entitled to the license because without a license they cannot engage in their non-conforming use of the property, which they allege is their protected property interest.  Since the allegations in the First Amended Complaint fail to sufficiently allege a non-conforming use, the Court need not

consider at this point whether such an argument states a valid claim *vis a vis* the denial of a business license.

**Equal Protection**

Plaintiffs allege they were treated differently than other businesses in Valley Park.  Defendants challenge Plaintiffs' allegations arguing Plaintiffs fail to identify any other similarly situated business.

> "The Equal Protection Clause of the Fourteenth Amendment ... is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where, as in this case, a plaintiff has not shown discrimination based on membership in a class or group, the Supreme Court's "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Mensie v. City of Little Rock*, 917 F.3d 685, 692 (8th Cir. 2019) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, (2000)).
>
> "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (emphasis supplied) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).

*Robinson v. Nebraska*, No. 8:22CV398, 2023 WL 3511371, at *4 (D. Neb. May 17, 2023).

Plaintiffs' First Amended Complaint fails to set forth a claim under the equal protection clause because it fails to identify other similarly situated businesses that were treated differently than Plaintiffs.  Reliance on generalizations does not

suffice because it cannot be ascertained from the allegations whether the "other businesses" were comparable to Plaintiffs in all material respects.

**Fifth Amendment Takings Claim**

Defendants argue Plaintiffs' First Amended Complaint fails to state a takings claim under the Fifth Amendment because the federal regulatory taking doctrine does not apply to state action against public nuisances.

> The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." In *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), we held that a property owner whose property has been taken by a local government has not suffered a violation of his Fifth Amendment rights—and thus cannot bring a federal takings claim in federal court—until a state court has denied his claim for just compensation under state law.

*Knick v. Twp. of Scott, Pennsylvania*, 204 L. Ed. 2d 558 (2019).

Plaintiffs argue that whether Valley Park's actions were made to eradicate a nuisance is a trial issue, and that they have stated a takings claim under both federal and state law.  In addition, Plaintiffs claim they have a right to the use of their property, including operation of their business.

The fundamental flaw in Plaintiffs' takings claim is the failure to delineate under what authority they claim they have been harmed.  Plaintiffs argue they are bringing claims under both federal and state law, but lump both theories into one count, which also may be a claim for inverse condemnation.  In order for Defendants to appropriately respond to Plaintiffs' claims, Defendants must be

advised of the authority on which Plaintiffs rely for each claim.  Moreover, Plaintiffs should set forth sufficient facts in each claim which informs Defendants of the basis for Plaintiffs' claims they are entitled to operation of their business over other uses of the property.

**Abuse of Process**

As previously discussed, Plaintiffs' allegations regarding their "legal non-conforming use" of the subject property are insufficient to set forth a cause of action.  As such, the allegations attempting to state an abuse of process claim cannot withstand the challenge.

**Monell Liability**

While Plaintiffs are correct that a heightened standard of pleading is not required in asserting a Section 1983 claim, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), Plaintiffs are required to set forth sufficient facts to apprise Defendants of the claimed policy or custom they claim caused the alleged injuries. Plaintiff's Complaint does not contain any facts from which it might reasonably be inferred that Valley Park had an unconstitutional policy or custom which caused the alleged violations of Plaintiff's rights. *Crumpley Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom."); *see also Iqbal*, 556 U.S. at

679 ("[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'—'that the pleader is entitled to relief.' " (quoting Fed. R. Civ. P. 8(a)(2))). The allegations of Plaintiffs' claim are merely conclusory statements without sufficient facts under the *Iqbal* standards.

**Official Capacity Claims**

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). Plaintiffs' official capacity claims are appropriately dismissed.

Plaintiffs do not delineate the capacity of the Valley Park employees against whom the suit is brought. Without such designation, the Court assumes the claims are brought in their official capacities.

**Leave to Amend**

Plaintiffs have sought leave to amend their complaint, if necessary.  This request will be granted, as the Court has found that the First Amended Complaint fails to satisfy both Rule 12(b)(1) and 12(b)(6).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss, [Doc. No. 53] is granted.

**IT IS FURTHER ORDERED** that Plaintiffs are given 14 days from the date of this Opinion to file an Amended Complaint consistent with the discussion herein.

Dated this 12th day of June, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE